UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**ESPER FRANK DAVIS** and
**ALVINA DAVIS**,

Debtors.

Case No. **07-60653-13**

# MEMORANDUM OF DECISION

At Butte in said District this 28th day of January, 2009.

In this Chapter 13 bankruptcy, after due notice, a hearing was held January 13, 2009, in Butte on attorney R. Clifton Caughron of Debt Relief Law, PLLC's Application for Professional Fees and Costs ("Application") filed November 13, 2008, wherein Caughron seeks an award of fees and costs in the amount of $980.81. The United States Trustee ("UST") filed an objection to Caughron's Application on November 20, 2008, and the Chapter 13 Trustee joined in the UST"s objection on November 21, 2008. R. Clifton Caughron ("Caughron") of Helena, Montana, appeared in support of the Application. Neal Jensen ("Jensen"), Assistant UST, residing in Great Falls, Montana, appeared at the hearing on behalf of the Office of the UST. This memorandum contains the Court's findings of fact and conclusions of law.

FACTS

Debtors' commenced this bankruptcy on June 6, 2007, by filing a voluntary Chapter 7 bankruptcy petition. In the Disclosure of Compensation of Attorney for Debtor(s) that

accompanied Debtors' Chapter 7 bankruptcy petition, Caughron disclosed that,

> Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:
>
> | | |
> |---|---|
> | For legal services, I have agreed to accept | $ 1,800.00 |
> | Prior to the filing of this statement I have received | $ 1,800.00 |

Consistent with Caughron's Disclosure of Compensation of Attorney for Debtor(s), Debtors' Statement of Financial Affairs shows that Debtors paid Caughron $500.00 on November 29, 2006, $500.00 on January 27, 2007, and $800.00 on March 1, 2007.

After the UST filed a motion to dismiss this case for abuse on August 22, 2007, Debtors filed a four-sentence generic notice of conversion to Chapter 13 on September 5, 2007. The UST and Debtors settled both the UST's motion to dismiss and conversion of this case with a Stipulation that was filed September 14, 2007. In an Order entered that same date, the Court approved the Stipulation and converted the Debtors' case to Chapter 13 of the Bankruptcy Code.

After conversion of this case to Chapter 13, Caughron filed an Amended Disclosure of Compensation of Attorney for Debtors on October 12, 2007, representing that,

> Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named Debtors (also referred to in the singular) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the Debtors in connection with the Chapter 13 bankruptcy case referenced above is as follows:
>
> For legal services, I have agreed to accept payment of fees and costs to be paid as follows: Attorney fees at $225.00 per hour; and Paralegal fees @ $120.00 per hour. The Debtor has agreed to pay fees of $1750.00 as an administrative expense of the Chapter 13 case, for base level services as described below, of which $00.00 has been paid. In addition, the Debtor previously paid fees of $400.00 to

perform a means test analysis under § 707(b), and $775.00 for fees in the Chapter 7 case. The funds collected for fees and costs, plus the fees paid as an administrative expense of this case, will be applied to payment of the Chapter 13 fees and costs, and, in most cases, no further request for fees or costs will be made. If necessary, Debtors have agreed that I may file an additional Application for Compensation if hourly fees earned by me exceed the amount stated above.

Debtors also filed an Amended Chapter 13 Plan on December 3, 2007, which Plan was confirmed by Order entered December 10, 2007. Debtors' confirmed Amended Chapter 13 Plan provides in paragraph 2, administrative claims,

> In advance of all other claims, the Trustee shall pay those claims, fees or charges specified in 11 U.S.C. 507(a)(1), including the Debtors' attorney fees **as allowed by the Court following submission of an application for approval for fees to be filed within 10 days after confirmation of the Plan**, plus costs and additional fees in such amounts as may be allowed by the Court, to Debt Relief Law, PLLC, PO Box 531, Helena, MT 59624.

(Emphasis in Addendum to Chapter 13 Plan Dated October 12, 2007). Caughron failed to timely file an application for approval of his fees and costs as contemplated by Debtors' confirmed Plan. However, Debtors' filed a "First Post-Confirmation Amended Chapter 13 Plan" on June 4, 2008, which Modified Plan was approved on June 5, 2008. Debtors' Modified Plan reduced the total funding under Debtors' plan from $27,500.00 to $21,520.00 and contained the following administrative claim provision, "In advance of all other claims, the Trustee shall pay those claims, fees or charges specified in 11 U.S.C. 507(a)(1), including the Debtors' attorney fees of $1,750.00, plus costs and additional fees in such amounts as may be allowed by the Court, to Debt Relief Law, PLLC, PO Box 531, Helena, MT 59624."[1]

---

[1] $1,750.00 is this Court's so called no-look fee under Mont. LBR 2016-1(b), which provides: "In a Chapter 13 case, if the debtor's plan is confirmed, and if professional fees for the debtor's attorney do not exceed $1,750.00, no application for such fees will be required and no order authorizing such fees shall be necessary."

Debtors filed a Second Post-Confirmation Amended Chapter 13 Plan on November 12, 2008, reducing the total funding under their plan from $21,520.00 to $8,125.00, with a liquidation analysis of $3,300.00. Paragraph 2(a) dealing with administrative claims was once again amended to read: "In advance of all other claims, the Trustee shall pay those claims, fees or charges specified in 11 U.S.C. 507(a)(1), including the Debtors' attorney fees and costs as may be allowed by the Court, to Debt Relief Law, PLLC, PO Box 531, Helena, MT 59624." Debtors' Second Post-Confirmation Amended Chapter 13 Plan was approved on November 20, 2008.

In the interim, Caughron filed the pending Application. Caughron also filed on December 16, 2008, a request to withdraw as Debtors' counsel of record. Caughron's request to withdraw was granted on December 16, 2008.

The UST raises several objections to Caughron's Application, but the most substantive objection is that:

> The introductory sentence of Caughron's fee application does not set forth the correct amount of fees and costs, the approval of which is being sought. Caughron states he is seeking approval of fees in the amount of $939.02, and costs of $41.79. A review of the body of Caughron's application reveals that this is his first fee application. He has not previously sought or received approval of any fees, including from his $1,800 retainer. Therefore, Caughron should have disclosed in his introductory sentence that he is, in fact, seeking approval of fees and costs totaling $2,780.81. In his application, Caughron improperly deducts $1,175 in fees and $625 in costs paid from the debtors' retainer, without having had the same approved by the Court. [These fees were not earned by Caughron prior to the filing of the debtors' bankruptcy case because his billing statements reflect that all of his time from his first meeting with the debtors on May 1, 2007 through the date of the filing of this case was denoted "No Charge."] Caughron has already credited against his total fees and costs the $1,800 that he received as a retainer. He had no authority to pay himself $1,800. Mont. LBR 2016-1(a) expressly provides: "No compensation or reimbursement of expenses shall be paid a professional, including from a retainer, until allowed by order of the Court under this Rule." Caughron never sought nor previously received approval for an award of interim fees or costs. He is in violation of this local rule

4

(**again**, as the same conduct occurred in the context of the Duncan case noted above, where Caughron took a $10,000 retainer without Court approval).

As demonstrated by the facts, the primary question before the Court is whether Caughron requests reasonable compensation for actual and necessary services provided to Debtors during the pendency of this entire bankruptcy case.

## APPLICABLE LAW

Caughron's Application, and the objections thereto by the UST and the Chapter 13 Trustee, require this Court to examine 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017. First, 11 U.S.C. § 329(b), reads in part:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive[.]

Debtors' case was commenced on June 6, 2007, and Caughron was paid $1,800.00 within the one-year period of time immediately preceding Debtors' petition date. Thus, this Court is authorized to assess the reasonable value of services Caughron provided to the Debtors and to compare that value with the amount Debtors paid or agreed to pay for Caughron's services.

Moreover, Caughron is seeking payment of additional fees and costs from the bankruptcy estate and has thus filed an application for fees and costs as required by 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017. With respect to fee requests from a bankruptcy estate and

5

notwithstanding the objections of the UST and the Chapter 13 Trustee, this Court has an independent obligation to review all fee applications to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D.Ill. 1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Id.* (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Extensive case law has developed regarding the amount and type of information that applicants must include in their applications. The case of *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:

> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added)  The Application should contain a detailed list of expenses including the date, the type and the amount.  Expenses must be actual not estimates.  *In re Wildman*, 72 B.R. 700-731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981).  An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client.  *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to insure that applicants provide:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

As explained by the Ninth Circuit Court of Appeals: "The detailed fee applications enable the bankruptcy court to fulfill its obligation to examine carefully the requested compensation in order to ensure that the claimed expenses are justified."  *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985).

A court's "overriding obligation" when examining a professional's fee application is to "'protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors.'" *Busy Beaver*, 19 F.3d at 844.  In awarding fees, a bankruptcy court is interested in not only adequately compensating attorneys in order to encourage competent counsel to choose bankruptcy as an area to practice, "but in insuring that the costs of administration do not consume all of the assets that would have been

available to creditors." *In re Columbia Plastics, Inc.*, 251 B.R. 580 (Bankr. W.D.Wash. 2000). In making a fee determination, the court must take into consideration whether the professional exercised "reasonable billing judgment." *In re Grosswiler Dairy, Inc.*, 257 B.R. 523, 528 (Bankr. D.Mont. 2000); *In re Mednet*, 251 B.R. 103 (9th Cir. BAP 2000).

DISCUSSION

At the hearing, Caughron argued that fee applications are very hard to defend and further stated that the UST "routinely" files what Caughron regards as "libelous and inaccurate objections." At the hearing, the Court was mystified by Caughron's assertion that the UST routinely files libelous and inaccurate objections because that is contrary to what the Court has experienced during the nine and one-half years that this judge has been on the bench. Thus, when I returned to Chambers following the hearing, I did some quick research on the Court's electronic case filing system and discovered that the UST has formally filed opposition to only 3 of the 50 or so fee applications filed by Caughron in the past five years.

In *In re Sullivan*, Case No. 06-60618, Caughron filed a request for fees on June 8, 2007, but subsequently withdrew the request on June 21, 2007, after the UST filed his objection. The case was subsequently dismissed for substantial abuse on June 27, 2007, and thus, Caughron did not refile his fee request in *Sullivan*. In *In re Duncan*, Case No. 07-61053, Caughron filed a request for fees and costs in the approximate amount of $60,000 on October 23, 2008, and after the UST objected to said fee request, Caughron agreed to withdraw his fee request with prejudice and retain his $10,000 retainer.[2] The UST's third objection was filed in the instant case. The

---

[2] The last hearing this Court recalls on a fee request by Caughron was in *In re Frazer*, Case No. 06-60704, which hearing was held December 9, 2008, in Butte after the debtors, and not the UST, opposed Caughron's $29,893.93 request for fees and costs.

Court does not consider three objections by the UST in a five year period routine.  Moreover, given the unique facts in *Sullivan* and *Duncan*, the Court would certainly not characterize the UST's objections as libelous or inaccurate.  Caughron's erroneous comments were obviously nothing but an attempt by Caughron to distract the UST and the Court from the merits of the matter at hand.

Turning to the merits of the Application, Caughron argues that he was not required to file a fee application for fees and costs incurred while this case was pending under Chapter 7 of the Bankruptcy Code.  Regardless of whether Caughron must or must not file a fee application, because Caughron was paid $1,800.00 within the one-year period of time immediately preceding Debtors' petition date, this Court, under 11 U.S.C. § 329(b) is authorized to assess the reasonable value of services Caughron provided to the Debtors and to compare that value with the amount Debtors paid or agreed to pay for the attorney's services.

The calculation used most frequently by courts to determine reasonable compensation is the number of hours expended multiplied by the hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  This approach is referred to as the lodestar method.  A reasonable hourly rate should be determined based on "the amount involved, customary fees, the level of skill required, reputation of the applicant, time limitation, whether the fee is contingent or fixed, and the case's undesirable aspects, if any."

In addition to the lodestar approach, some courts have adopted local practice orders or rules permitting attorneys to be paid presumptively reasonable and standardized fees for basic legal services without filing a fee application.  *See generally*, Keith M. Lundin, CHAPTER 13 BANKRUPTCY § 294.1(3d ed.2002)(cited in *In re Eliapo*, 298 B.R. 392, 394 (9th Cir. BAP 2003)).

Use of a flat fee is an attorney's offer to provide basic services for an agreed amount in exchange for receiving compensation without the necessity of filing a fee application.  Because a fee application is not required if a flat fee at or under the presumptive amount is charged, practitioners often refer to these arrangements as "no-look" fees.  *See, e.g., In re Wright*, 290 B.R. 145, 147 (Bankr.C.D.Cal.2003).  The flat fee is not intended to serve as a retainer against which an attorney charges time expended until the retainer is exhausted, followed by an application for compensation for any remaining unpaid services.

      Under Mont. LBR 2016-1(b), this Court has a no-look fee of $1,750.00 in Chapter 13 cases and $4,500.00 in Chapter 11 and 12 cases.  If fees in Chapter 11, 12 or 13 cases are below the no-look fee, debtor's attorneys do not need to file fee applications.  However, if a debtor's attorney's fees exceed the no-look fee, the attorney must file a fee application for all fees and costs incurred in the case, not just those fees and/or costs that exceed the no-look amount.  This Court does not have a no-look fee for Chapter 7 cases, and generally leaves the reasonableness of prepaid Chapter 7 fees to the sound scrutiny of the UST and the individual Chapter 7 trustees.

      Section 330(a)(3) of the Bankruptcy Code requires that this Court analyze requests for attorney's fees by taking into account, *inter alia*, the time spent on the services and the rates charged for such services. Thus, attorneys must keep contemporaneous time records if they seek to substantiate the fees they charge in bankruptcy cases.  Without such time records, attorneys cannot carry their burden of justifying the fees charged or requested.

      Keeping time records is a sound practice even in a flat fee engagement, if for no other reason than to know whether counsel is making money by taking engagements at that flat rate.  But the records also provide valuable support for the fee request should someone decide to object

after all of the work has been done. Caughron's attempt at ad hoc justification of his $1,800.00 flat fee was simply incomprehensible and his failure to substantiate his flat fee with any evidence could, in and of itself, preclude the approval of the fees charged in this case.

In support of his flat fee charge of $1,800.00, Caughron states that $400.00 was charged for preparing Debtors' mean test, $775.00 was charged for the Chapter 7 case and $625.00 applies to "Court fees and costs." Caughron breaks down the $625.00 of costs as $450.00 in Chapter 7 costs, including the filing fee of $299.00 and $175.00 of means test costs. Caughron attached contemporaneous billing records to his Application and those records show that Caughron's fees during this entire case were $8,393.25, including $398.13 for "means test." However, Caughron charges $6,493.13 for 28.86 hours of work performed on September 5, 2007, for drafting a response to "UST Motion to Dismiss."[3] Caughron obviously got up very early to squeeze 28.86 hours of work into a 24 hour day. The absurdity of the entry combined with the fact that Caughron filed a generic one-page notice of conversion compels this Court to deny the fees associated with such entry. The Court would also denies Caughron's fee of $130.63 on December 4, 2007, for "travel time to/from 341 hearing (sic)" because Debtors' 341 meeting was held in November and not December. If the Court ignores Caughron's ridiculous entry of 28.86 hours spent on September 5, 2007, and disallows the mislabeled entry of $130.63 on December 4, 2007, Caughron's fees total $1,769.49. Caughron's paralegal's fees for the entire bankruptcy case total $403.14 and the total costs, excluding the "means test" costs, which appear duplicative of Caughron's fee of $398.13 for preparation of the means test, leaves costs at $41.79

---

[3] The only document filed that could possibly relate to this entry is the four-sentence generic notice of conversion. The motion to approve compromise settlement and the stipulation for conversion were both drafted by the UST.

11

plus the filing fee of $299.00.  Based upon the foregoing, total fees and costs are $2,513.42.

Notwithstanding the foregoing, Caughron was reluctant to rely on his billing records and instead maintained throughout the hearing that his "blended rate," which included a flat fee of $1,800.00, was reasonable.  The Court would note that 45 bankruptcy cases were filed during June of 2007, the same month that these Debtors filed their bankruptcy petition.  Of the cases filed in June of 2007, 28 were originally filed under Chapter 7, with 2 subsequently converted to Chapter 13, and 17 were filed under Chapter 13, with 1 subsequently converted to Chapter 7.  In the one other case filed under Chapter 7 and subsequently converted to Chapter 13, the attorney appears to be charging, pursuant to the debtors' confirmed Chapter 13 plan, the Chapter 13 no-look fee of $1,750.00, plus costs in the amount of $250.00, for the entire bankruptcy.  Considering all cases originally filed under Chapter 7 during June of 2007 and excluding three cases filed *pro se*, the attorney fees ranged from $1,800.00, in this case, to $701.00, with an average of $1,200.00 per Chapter 7 case.  If the Court disregards Caughron's fee of $1,800.00, the average Chapter 7 fee drops to $1,175.00.

If the Court were to allow Caughron an average fee of $1,175.00 for the Chapter 7 case and award Caughron an additional $980.81 in fees and costs as requested in the Application, Caughron would be entitled to a total award of $2,155.81, of which $1,800.00 has already been paid by the Debtors.  After very careful consideration of the facts in this case and given this Court's prior dealings with Caughron, the Court concludes that Caughron's reasonable and necessary "blended" fees and costs in this case should not exceed $2,155.81.  As noted, Caughron has already been paid $1,800.00 by the Debtors.  Thus, Caughron is entitled to an additional payment of $355.81 as an administrative expense of this Chapter 13 case, with the

remainder of the fees and costs denied.

In accordance with the foregoing, the Court, will enter a separate order providing as follows:

IT IS ORDERED that R. Clifton Caughron of Debt Relief Law, PLLC's Application for Professional Fees and Costs filed November 13, 2008, is granted in part, and denied in part; and R. Clifton Caughron and Debt Relief Law, PLLC are awarded total fees and costs of $355.81 ($2,155.81 less $1,800.00 paid by Debtors prepetition), which amount shall be treated as an administrative expense of this Chapter 13 bankruptcy. None of the denied fees will be owed by Debtors following completion of their Chapter 13 plan.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana